UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLEY E. SHEFFER and SCOTT SHEFFER,<br>  Plaintiffs,<br>      v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br>      Defendant. | Civil Action No. 08-0904 (JDB) |

## MEMORANDUM OPINION

Plaintiffs Shirley and Scott Sheffer bring this action against defendant Novartis Pharmaceuticals Corporation, alleging that Ms. Sheffer suffered injuries as a result of her treatment with drugs marketed and distributed by Novartis. Defendant now moves to transfer venue, arguing that the Southern District of Ohio is a more convenient and just forum for this litigation. For the reasons stated below, the Court finds that private and public interest considerations outweigh the deference given to plaintiffs' choice of forum. Accordingly, the Court will grant defendant's motion and transfer this action to the Southern District of Ohio.

I. Background

The Sheffers are residents of Yorkshire, Ohio, located in the Southern District of Ohio. Compl. ¶ 2. All of the events leading up to this lawsuit occurred in Yorkshire and the surrounding area. Id.; Def.'s Mot. to Change Venue at 1 (May 7, 2012) [Docket Entry 9]. Novartis is a multinational corporation that markets and distributes Aredia, a drug used to treat diseases that have metastasized to bone, throughout all fifty states and the District of Columbia. Compl. ¶¶ 5, 7.

1

Ms. Sheffer's physicians treated her for breast cancer by infusing her with Aredia. Id. ¶ 2. Plaintiffs claim that Aredia caused the bone tissue of Ms. Sheffer's jaw to die, a painful and disfiguring condition known as osteonecrosis. Id. ¶ 1. They further claim that defendant knew or should have known of this adverse effect, and nonetheless continued to market and distribute Aredia. Id. ¶¶ 12-16.

Invoking diversity jurisdiction, plaintiffs filed suit in this district on May 27, 2008. Id. ¶ 6. They seek compensatory and punitive damages under a number of different theories, including strict liability, failure to warn, and, in Mr. Sheffer's case, loss of consortium. Id. ¶¶ 22-54. On August 1, 2008, the Judicial Panel on Multidistrict Litigation transferred this case to the Middle District of Tennessee, where hundreds of similar lawsuits have been consolidated to litigate common factual questions more efficiently. See In re Aredia and Zometa Prods. Liab. Litig., No. 3:06-md-1760 (M.D. Tenn.) ("MDL-1760"); Letter from J.P.M.L. (Aug. 1, 2008) [Docket Entry 2]. The Panel having remanded the case back to this Court, defendant now moves to transfer venue. See Def's Mot.; Conditional Remand Order (Jan. 9, 2012) [Docket Entry 4].

II. Discussion

Novartis seeks to transfer this case to the Southern District of Ohio under 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404(a) is a "federal judicial housekeeping measure" that allows a district court to "authorize a change of courtrooms" based on an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622, 636-37 (1964). The burden

is on the moving party to establish that transfer is proper. Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).

The threshold requirement of § 1404(a) is met here: the transferee forum is a district "where [the action] might have been brought." See id. Venue and jurisdiction are proper in both the Southern District of Ohio and the District of the District of Columbia.[1] Neither party disputes that the action could have been brought in either district. See Def.'s Mot.; Pls.' Mem. in Opp'n to Def's Mot. (May 18, 2012) [Docket Entry 10].

In deciding whether the "convenience of parties and witnesses" and "the interest of justice" warrant transfer, courts have identified several relevant factors. Mirroring the statutory language, these factors fall under two broad headings, private-interest factors and public-interest factors. See Trout Unlimited, 944 F. Supp. at 16. "If the balance of private and public interests favors a transfer of venue, then a court may order a transfer." Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008).

A. Private-interest Factors

In determining whether "the convenience of parties and witnesses" favors transfer, courts consider the following private-interest factors:

---

[1] Novartis is the only defendant, so venue is proper in any district where it is subject to personal jurisdiction. See 28 U.S.C. § 1391(b)(1), (c)(2). This Court would likely have personal jurisdiction because Novartis "does business" in this jurisdiction. See Shirlington Limousine and Transp., Inc. v. San Diego Union-Tribune, 566 F. Supp. 2d 1, 4-5 (D.D.C. 2008) (interpreting D.C. Code § 13-334 as a grant of general jurisdiction). Ohio would likely have specific personal jurisdiction over Novartis because that is where the Aredia was sold. See Ohio Rev. Code Ann. § 2307.382(A)(3), (4) (granting personal jurisdiction over a person who causes tortious injury by an act or omission in Ohio). Regardless, Novartis does not object to personal jurisdiction or the propriety of venue in either district, and has arguably consented to both by filing this § 1404(a) motion, the predicate of which is proper venue in both the transferor and transferee fora. See Freeman v. Bee Mach. Co., 319 U.S. 448, 453 (1943) ("[V]enue [is] a personal privilege which may be lost . . . by submission through conduct.").

(1) the plaintiff's choice of forum;
(2) the defendant's choice of forum;
(3) whether the claim arose elsewhere;
(4) the convenience of the parties;
(5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and
(6) the ease of access to sources of proof.

Id. at 32-33; see Trout Unlimited, 944 F. Supp. at 16. The occasional redundancy of these factors serves a noble goal: ensuring that each motion to transfer gets thorough consideration. The Court will consider each factor in turn. On the whole, all of the private-interest factors are either neutral or favor transfer, with the exception of the plaintiff's choice of forum, which weighs against transfer.

1. Plaintiff's Choice of Forum

The plaintiff's choice of forum is a "paramount consideration in any determination of a transfer request." Thayer/Patricof Educ. Funding, LLC v. Pryor Res., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (internal quotation marks omitted). The plaintiff's considerable freedom to bring a lawsuit in an advantageous forum should not be compromised by a transfer that "merely shift[s] the inconvenience . . . from one party to the other." 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3848 (3d ed. 1998) (citing Van Dusen, 376 U.S. at 646). The "substantial deference"[2] given to the plaintiff's choice of forum makes this different from other

---

[2] Courts have described the deference given to the plaintiff's choice in somewhat inconsistent terms. Compare Akiachak Native Cmty. v. Dep't of Interior, 502 F. Supp. 2d 64, 67 (D.D.C. 2007) ("[P]laintiff's choice of forum should rarely be disturbed."), with Trout Unlimited, 944 F. Supp. at 17 ("some deference" given to plaintiff's choice). Courts initially interpreted § 1404(a) as a codification of forum non conveniens doctrine, which employs a strong presumption in favor of the plaintiff's choice because, when the moving party prevails, the plaintiff's case is dismissed. See, e.g, Wiren v. Laws, 194 F.2d 873, 874-75 (D.C. Cir. 1951) (quoting Gulf Oil Corp v. Gilbert, 330 U.S. 501, 508 (1947) (interpreting forum non conveniens doctrine)) ("[P]laintiff's choice of forum should rarely be disturbed.") Although Norwood v. Kirkpatrick, 349 U.S. 29, 30-32 (1955), clarified that § 1404(a) motions are to be granted more freely than

cases where plaintiffs have moved to transfer. Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). In support of its motion to transfer, Novartis attached several motions and orders requesting and granting transfers from lawsuits involving similar claims. Def.'s Reply to Opp'n to Mot. to Change Venue (May 22, 2012) [Docket Entry 11] Exs. 1-6. These motions and orders, however, were all initiated by plaintiffs, and were all unopposed. See id. Therefore, the Court gives them little weight in its analysis.

However, the deference owed the plaintiff's chosen forum is lessened when the forum has "no meaningful ties to the controversy," and lessened further still when the forum to which transfer is sought has "substantial ties" to both the plaintiff and "the subject matter of the lawsuit." Trout Unlimited, 944 F. Supp. at 17. Here, none of the events connected to the lawsuit occurred in the District of Columbia; everything happened in the Southern District of Ohio. The Sheffers reside in Ohio, Ms. Sheffer was treated with Aredia in Ohio, and any injuries suffered by the Sheffers were suffered in Ohio. See Def.'s Mot. at 1-3. The only tie between this case and the District of Columbia appears to be this Court's in personam jurisdiction over Novartis, which may exist in most locations across the country, given the scope of Novartis's sales. Therefore, the deference usually given to the plaintiff's choice of forum is diminished, and this factor weighs only slightly against granting the motion to transfer.

2. Defendant's Choice of Forum

While the defendant's choice of forum is a consideration when deciding a § 1404(a) motion, it is not ordinarily entitled to deference. See Mahoney v. Eli Lilly & Co., 545 F. Supp. 2d 123, 127 (D.D.C. 2008). And here, where defendant moves to transfer over plaintiffs' opposition, it must establish that the added convenience and justice of litigating in its chosen

---

forum non conveniens dismissals, much of the language from older cases is still in circulation. See generally 15 Wright & Miller supra, § 3848.

forum overcomes the deference ordinarily given to the plaintiffs' choice. See In re Vitamins Antitrust Litig., 263 F. Supp. 2d 67, 69 (D.D.C. 2003) (finding that defendant has the burden to establish the appropriateness of transfer despite lessened deference given to plaintiff's choice). In addition, Novartis, a multinational corporation, readily able to defend this lawsuit in either district, has no real stake in having the case heard in either forum. Compl. ¶¶ 4-5; Pls.' Mem. in Opp'n at 3-5; see Veney v. Starbucks Corp., 559 F. Supp. 2d 79, 84 (D.D.C. 2008) (giving little weight to multinational corporation's choice of forum). Accordingly, this factor is neutral.

3. Where the Claim Arose

When the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum, transfer is favored. Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior, 669 F. Supp. 2d 88, 95 (D.D.C. 2009). A claim predicated on a manufacturer's liability for injuries caused by a prescription drug arises wherever the plaintiff took the drug, purchased the drug, and was prescribed the drug. Dean v. Eli Lilly & Co., 515 F. Supp. 2d 18, 22 (D.D.C. 2007). Ms. Sheffer does not claim to have taken or purchased Aredia in the District of Columbia. See Compl. ¶¶ 2-5; Def.'s Mot. at 1. Nor was Ms. Sheffer prescribed Aredia in the District of Columbia. See Compl. ¶¶ 2-5; Def.'s Mot. at 1. In addition, plaintiffs do not allege that their injuries were discovered or diagnosed in this forum. See Compl. ¶¶ 2-5; Def.'s Mot. at 1; Dean, 515 F. Supp. 2d at 22. Because the claim arose elsewhere, this factor favors transfer.

4. Convenience of the Parties

The Sheffers argue that this district's proximity to defendant's New Jersey headquarters makes litigating here more convenient for Novartis. Pls.' Mem. in Opp'n at 4-5. Convenience, however, is not a handicap to be foisted upon an unwilling adversary. For their part, the Sheffers "made clear [their] willingness to forego the convenience of a geographically nearby forum"

when they filed this lawsuit in the District of Columbia. Treppel v. Reason, 793 F. Supp. 2d 429, 437 (D.D.C. 2011) (internal quotation marks omitted). Novartis's motion to transfer can hardly be impeached by pointing out that travel from its New Jersey headquarters to this district is more convenient logistically than travel to the Southern District of Ohio. Indeed, the difference in travel time is inconsiderable in any event.

The Sheffers also claim that, because of Ms. Sheffer's cancer and other medical problems, they will be inconvenienced by the delay associated with transfer. Pls.' Mem. in Opp'n at 5, 7. While the Court is sympathetic to this concern, this inconvenience cannot be weighed against transfer under these circumstances. The only case decided by a court in this Circuit to find a litigant's medical problems to be a relevant factor in the § 1404(a) determination is distinguishable. In Elemary v. Philipp Holzmann A.G., the defendant, an Alabama resident, was sued in the District of Columbia and moved to transfer the lawsuit to the Northern District of Alabama. 533 F. Supp. 2d 144, 147 (D.D.C 2008). Because the Elemary defendant "rarely travelled" due to "significant health problems," Chief Judge Lamberth found that the inconvenience of defending a lawsuit far away from home favored transfer. Id.  The Sheffers do not claim to be inconvenienced by the hardships of travel, or by any particular characteristics of the transferee forum. Furthermore, as discussed below, any delay attributable to transferring this case is not likely to be significant enough to pose a sizable inconvenience.

When the original plaintiff and defendant are the only parties to a lawsuit, and each has staked out a position on the transfer motion, unrelated to considerations of convenience, this factor offers little that is not encompassed by considering the parties' choices of fora. Thus, "the convenience of the parties" merits little weight as an independent factor. Here, in any event, it is neutral on the question of transfer.

5. Convenience of Witnesses

The convenience of the witnesses has been described as "the most critical factor" to examine when deciding a motion to transfer. Pyrocap Int'l Corp. v. Ford Motor Co., 259 F. Supp. 2d 92, 97 (D.D.C. 2003). Novartis contends that trying the case in this district could deprive it of subpoena power over witnesses who reside in the Southern District of Ohio, such as Ms. Sheffer's physicians. Def.'s Reply at 3. The Sheffers argue that, in previous MDL-1760 cases, treating physicians were uniformly called by the plaintiffs bringing the lawsuit, not Novartis, and that Novartis can rely upon deposition testimony taken during MDL-1760 if any witnesses prove unavailable in this district. Pls.' Mem. in Opp'n at 4-5.

To make a strong showing on this factor, the moving party must specify "what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." Thayer/Patricof Educ., 196 F. Supp. 2d at 33. Defendant specifies none of these details in support of its motion. Still, plaintiffs do not dispute that all of the non-expert,[3] nonparty witnesses are in the Southern District of Ohio, and that some of them may not be available for live testimony. See Pls.' Mem. in Opp'n at 4-7; Def.'s Reply at 2-3. And plaintiffs' attempt to extrapolate the insignificance of live testimony in this litigation from previous litigation against defendant is unavailing. See Pls.' Mem. in Opp'n at 7. Compulsory process over witnesses is often "essential" to getting a "full and true disclosure of the disputed facts." FTC v. Brigadier Indus., 613 F.2d 1110, 1115 (D.C. Cir. 1979) (internal quotation marks omitted). Therefore, despite defendant's lack of specificity, the availability of compulsory process for important witnesses in the transferee forum somewhat favors transfer.

6. Ease of Access to Sources of Proof

---

[3] Because expert witnesses are usually compensated for travel by the parties, their convenience is given little, if any, consideration in the decision to transfer. See Dean, 515 F. Supp. 2d at 23.

Modern technology allows most documentary evidence to be easily transferred. Thayer/Patricof Educ., 196 F. Supp. 2d at 36. Hence, the location of documents is much less important to determining the convenience of the parties than it once was. Id. Here, the extensive discovery that took place while the case was in multidistrict litigation further decreases the importance of this factor. Still, if any additional discovery is needed, all of the relevant evidence, such as Ms. Sheffer's medical records, is located in the Southern District of Ohio. To the limited extent that "ease of access to sources of proof" is significant to the § 1404(a) determination, this factor favors transfer.

7. Summary of Private-Interest Factors

As a whole, the balance of private-interest factors is far from conclusive, but it does marginally favor transfer. The only private-interest factor weighing against transfer is the plaintiff's choice of forum. However, while that factor is usually a central concern in the § 1404(a) determination, its importance here is diminished because the controversy has no connection to this forum, while both the dispute and the plaintiffs have strong ties to the transferee forum. The convenience of witnesses and the ease of access to sources of proof both weigh slightly in favor of transfer. The convenience of witnesses would usually assume greater importance, but Novartis has not specified the necessary details regarding unavailability and possible testimony that are needed to make a strong showing on this factor. Modern technology, along with the extensive findings in MDL-1760 have greatly reduced the importance of the ease of access to sources of proof in this case, but the fact that all documentary proof is in the transferee forum slightly favors transfer.

B. Public-interest Factors

The multi-factor analysis of private-interest and public-interest factors is ultimately an exercise in statutory interpretation. So, although "the interest of justice" is an important consideration when deciding a § 1404(a) motion, "the letter of the section suggests" that transfer may not "be directed solely on that account." N.Y. Cent. R.R. Co. v. United States, 200 F. Supp. 944, 946-47 (S.D.N.Y. 1961) (three-judge court) (Friendly, J.). To determine whether "the interest of justice" favors transfer, courts consider the following public-interest factors:

(1) the transferee's familiarity with the governing laws;
(2) the relative congestion of each court; and
(3) the local interest in deciding local controversies at home.

Montgomery, 532 F. Supp. 2d at 34; see also Trout Unlimited, 944 F. Supp. at 16. In addition, limitations on jurisdiction and venue (under 28 U.S.C. § 1391) are usually adequate safeguards of the public interest. Therefore, the balance of private-interest factors must be unclear, as it is here, before these public-interest factors would be given decisive weight. See Ingram v. Eli Lilly & Co., 251 F. Supp. 2d 1, 5-6 (D.D.C. 2003) (unnecessary to weigh public-interest factors when private-interest factors did not support transfer); 15 Wright & Miller, supra, § 3854. The Court considers each factor in turn.

1. Transferee's Familiarity with Governing Law

It is preferable to try a diversity case "in a forum that is at home with the state law that must govern the case." Van Dusen, 376 U.S. at 644. Novartis argues that, because Ohio tort law governs this case, the transferee forum's expertise in applying that state's law favors transfer. Def.'s Mot. at 3-4. The Sheffers concede that Ohio tort law governs, but argue that this Court's familiarity with federal regulatory law and D.C. choice of law, especially as it pertains to the applicable statute of limitations, is more significant than the Southern District of Ohio's familiarity with Ohio tort law. Pls.' Mem. in Opp'n at 6-7.

All district courts are presumed to be equally adept at applying federal law, so the involvement of federal regulatory law is neither here nor there. See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F. 2d 1171, 1175 (D.C. Cir. 1987) (discussing transfer under 28 U.S.C. § 1407). Similarly, whether the transferor or the transferee forum's choice-of-law provisions govern a transferred diversity case is a question of federal law with no bearing on the decision to transfer. See id. Still, insofar as choice of law determines the applicable law, it is relevant. When a case is transferred under § 1404(a), the transferee court is "obligated to apply the state law that would have been applied if there had been no change of venue." Van Dusen, 376 U.S. at 639. This principle requires D.C. choice of law, as it pertains to the governing substantive law and statute of limitations, to apply in this case.[4] See id.; Ferens v. John Deere Co., 494 U.S. 516, 532-33 (1990).

Under D.C. choice-of-law analysis, when one state's policies would be advanced by applying its substantive law in a tort case, and another state's policies would not, there is a false conflict, and the law of the interested state must apply. See, e.g., Herbert v. District of Columbia, 808 A.2d 776, 779 (D.C. 2002). Applying Ohio tort law to an Ohio injury advances Ohio policies, but the same could not be said for D.C. tort law and policies; thus, there is a "false conflict," and D.C. choice of law mandates application of Ohio substantive tort law. See id. On the other hand, under the "established rule" of D.C. choice of law, the statute of limitations is "procedural and is governed by the law of the forum." Hodge v. S. Ry. Co., 415 A.2d 543, 544 (D.C. 1980); see also A.I. Trade, 62 F.3d at 1458; May Dep't Stores, Inc. v. Devercelli, 314 A.2d

---

[4] The District of Columbia is treated as a state for choice-of-law purposes. A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995).

11

767, 773 (D.C. 1973). Hence, the District of Columbia's statute of limitations applies to this lawsuit.

Familiarity with the governing law is more significant when the legal issues presented are complex or unsettled. Schmid Labs., Inc. v. Hartford Accident and Indem. Co., 654 F. Supp. 734, 737 n.11 (D.D.C. 1986) (citing Eli Lilly & Co. v. Home Ins. Co., 764 F.2d 876 (D.C. Cir. 1985)). Although the application of D.C.'s choice-of-law provisions leads to the somewhat counter-intuitive result of applying the D.C. statute of limitations to an Ohio tort claim,[5] this is the result the law clearly mandates. When choice of law is dictated by unambiguous Supreme Court and D.C. Court of Appeals precedents, it can hardly be deemed complex or unsettled. In contrast, products-liability law "involves complex and continually evolving concepts." Godoy ex rel. Gramling v. E.I. du Pont de Nemours and Co., 768 N.W.2d 674, 680 (Wis. 2009). As is the norm in a products-liability lawsuit, the Sheffers assert liability under a number of distinct theories, see Compl. ¶¶ 22-54, each of which will require the application of a complex body of law to the vast universe of facts uncovered by the MDL-1760 process. The Southern District of Ohio's experience interpreting Ohio products-liability law will help ensure that this litigation is just and efficient. Hence, this factor strongly favors transfer.

2. Relative Congestion of Each Court

Neither party addresses the relative congestion of each court. Still, the Court may consider undisputed facts outside the pleadings when deciding a motion to transfer. Cooper v.

---

[5] This outcome would seem to encourage forum-shopping, a result usually frowned upon. See Schmid Labs., 654 F. Supp. at 736-37 (finding that plaintiff's forum-shopping favored granting the defendant's transfer motion). Nonetheless, the Supreme Court has determined that, because applying the transferor's choice of law does not allow plaintiffs "to obtain a law that [they] could not obtain through initial forum selection," the risk of encouraging forum-shopping is outweighed by "the systemic costs of litigating in an inconvenient place." Ferens, 494 U.S. at 528-29.

Farmers New Century Ins., 593 F. Supp. 2d 14, 18 (D.D.C. 2008). This factor is examined by comparing the districts' median times from filing to disposition or trial. Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010). Median time from filing to disposition weighs slightly against transfer: 7.3 months in this district, compared to 10.3 months in the Southern District of Ohio.[6] But from filing to trial, it favors transfer: 39.7 months in this district, compared to 26.4 months in the Southern District of Ohio.[7] With indicators pointing in both directions, and a lack of certainty with regard to whether the case is headed for trial, comparing the relative congestion of the courts is not very helpful. In addition, Novartis has moved to transfer relatively early in this litigation. This Court has not yet thoroughly familiarized itself with the voluminous record, so any delay attributable to transfer is likely to be minimal. Cf. Mahoney, 545 F. Supp. 2d at 129 ("If the defendant had interposed its motion earlier in the litigation process, more of the equities would tilt to transfer."). Overall, this factor is in equipoise.

3. Local Interest in Deciding Local Controversies at Home

Each state has "an interest in redressing the harms of its citizens." Macmunn, 559 F. Supp. 2d at 63. In addition, when litigation is not "handled at its origin," it often creates "administrative difficulties." Ferens, 494 U.S. at 530 (quoting Gulf Oil Corp., 330 U.S. at 508-09). For example, "jury duty is a burden that ought not to be imposed upon the people of a

---

[6] Admin. Office of the U.S. Courts, Table C-5: U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases, United States Courts, http://www.uscourts.gov/ uscourts/statistics/judicialbusiness/2011/appendices/Co5Sep11.pdf.

[7] Admin. Office of the U.S. Courts, Table T-3: U.S. District Courts—Median Time Intervals from Filing to Trial for Civil Cases in which Trials were Completed, United States Courts, http://uscourts.gov/uscourts/statistics/judicialbusiness/2011/appendices/T03Sep11.pdf.

13

community which has no relation to the litigation." Id. And holding a trial within the view of the interested community is preferable to holding it "where they can learn of it by report only." Id.

Plaintiffs argue that, because Aredia was marketed and dispensed throughout the nation, there is nothing uniquely local about this litigation. Pls.' Mem. in Opp'n at 4-5. Indeed, when national significance attaches to a controversy, local interest can sometimes be diminished. See Ingram, 251 F. Supp. 2d at 6; Wilderness Soc. v. Babbitt, 104 F. Supp. 2d 10, 13 (D.D.C. 2000).

This case, however, presents none of the concerns that led courts to emphasize the national significance of the disputes in Ingram and Wilderness Society. In Ingram, the plaintiff was exposed to diethylstilbestrol ("DES") in utero, when her mother lived in Washington. Thirty years later, her injuries became apparent. 251 F. Supp. 2d at 2. When she filed suit against the manufacturer of DES, neither she nor her mother resided in Washington. Id. at 6. Therefore, when the defendant moved to transfer the case to Washington, the national scope of the DES litigation proved to be more important than Washington's diminished local interest in the dispute, and the court denied the defendant's motion for transfer. Id. In Wilderness Society, the plaintiffs filed suit over the environmental impact of oil and gas development in Alaska's National Petroleum Reserve. 104 F. Supp. 2d at 11-12. The court denied the defendants' motion to transfer the case to Alaska. Id. at 17. Because the Reserve is a national resource, and because the contested decisions were made by Department of Interior officials in the District of Columbia, the court found that the case's "national importance" was more significant than Alaska's localized interest in the dispute. Id.

In contrast, Ms. Sheffer's exposure to Aredia did not occur in the distant past or in a place where she no longer lives; it happened recently, in the state where she still resides, and to which defendant seeks to transfer. Compl. ¶¶ 2-5; Def.'s Mot. at 1-3. And although the nation is

14

understandably interested in litigation over a nationally-marketed drug, this case does not concern a national resource. Nor does it involve decisions made by government officials in the District of Columbia. Hence, "the fact that [this] litigation involves nationwide marketing practices does not upend [Ohio's] local interest." Macmunn, 559 F. Supp. 2d at 63. It is reasonable to allow an Ohio court to redress alleged harms to its citizens. And although not an especially important consideration, if the case goes to trial it would make little sense to burden District of Columbia residents with jury duty, or to hold the proceedings far away from interested Ohio residents. This factor therefore favors granting the motion to transfer.

4. Summary of Public-Interest Considerations

Because the private-interest factors only marginally favor transfer, the public-interest factors gain some importance in deciding whether to grant defendant's motion to transfer. And here, the balance of public-interest factors unambiguously favors transfer. Because this is a complex products-liability lawsuit, familiarity with the governing laws will likely be important. The Southern District of Ohio's familiarity with Ohio tort law will help to ensure justice and efficiency in this litigation. And Ohio's interest in redressing the harm of its citizens in full view of the interested community is not mitigated by any purported national dimensions of litigation over these drugs, so the local interest in deciding local controversies at home favors transfer as well.

III. Conclusion

"[S]ound judicial administration" and "good common sense" dictate the result here. 15 Wright & Miller supra, § 3848. All of the private-interest and public-interest factors either favor granting Novartis's motion to transfer or are neutral, with the exception of the plaintiffs' choice of forum. And the significance of the plaintiffs' choice of forum is diminished because this

15

forum has no ties to the case. When faced with similar motions, where the defendant seeks to transfer out of a forum with no ties to the case, and into a forum where all events giving rise to the dispute happened, courts have generally granted the motion to transfer. See, e.g., Macmunn, 559 F. Supp. 2d at 63; Dean, 515 F. Supp. 2d at 18; Sierra Club v. Flowers, 26 F. Supp. 2d 62 (D.D.C. 2003); Trout Unlimited, 944 F. Supp. at 16. See generally 15 Wright & Miller, supra, § 3848 n.17 (collecting cases). The Court makes the same assessment here: defendant has met the requirements of § 1404(a) by demonstrating that the "convenience of parties and witnesses" favors transfer, and that such a transfer is "in the interest of justice." Accordingly, the Court will grant the motion to transfer. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 10, 2012